IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

LINNIE R. ASHTON                                                    PLAINTIFF

VS.                    Civil No. 3:14-cv-03063-MEF

CAROLYN W. COLVIN, Acting Commissioner,
Social Security Administration                                     DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Linnie R. Ashton, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying her claim for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act (hereinafter "the Act"), 42 U.S.C. § 423(d)(1)(A). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I. Procedural Background**

On September 22, 2011, Plaintiff filed an application for DIB, alleging an onset date of August 9, 2009, due to methicillin resistant staphylococcus aurea (MRSA) and depression. (T. 140-146, 183) Her claim was denied initially on December 7, 2011, and upon reconsideration on March 7, 2012. (T. 89-91, 96-97) Plaintiff requested an administrative hearing on April 16, 2012 (T. 98-99), and a video hearing was held on September 7, 2012, before the Hon. Jon Boltz, Administrative Law Judge ("ALJ"). (T. 53-85) Plaintiff appeared in Mountain Home, Arkansas, and Judge Boltz presided

over the hearing from Albuquerque, New Mexico. Plaintiff was represented by her attorney, Frederick S. Spencer. Tanya Owen, an impartial Vocational Expert ("VE"), provided her response to a Vocational Interrogatory on December 18, 2012. (T. 265-268)

Subsequent to the administrative hearing, the case was reassigned to the Hon. Glenn A. Neel, ALJ, due to the unavailability of Judge Boltz. Prior to issuing his Decision, Judge Neel reviewed the entire record of the case and determined that no additional hearing was required. (T. 38)

Plaintiff was 46 years old at the time of the hearing, and she had a 10th grade education. (T. 55) She has past relevant work ("PRW") experience as a receptionist in a medical office, as a customer service representative in a UPS store, and as a data entry clerk at a shirt factory. (T. 56,, 58, 192) Plaintiff last worked on April 11, 2011. (T. 59, 169) In a Work Activity Report dated October 17, 2011, the reason for her departure from work on April 11, 2011 is inconsistently stated as being because "of my medical condition," and for other reasons, "came back late from lunch." (T. 169) In other submissions, Plaintiff advised that she was let go because of excessive absenteeism. (T. 183, 216) She advised Philip W. Brown, Ph.D., during a psychological evaluation that she quit working in April, 2011, "due to being unable to cope with new stresses brought about by changes in the operations of the clinic," and that after quitting the job, she looked for jobs but could find nothing, then filed for disability. (T. 382)

In a Decision issued on April 5, 2013, the ALJ's findings included: (1) that Plaintiff engaged in substantial gainful activity from August 9, 2009, the alleged date of onset, through April 11, 2011; (2) that Plaintiff has severe impairments of skin disorder (foliculitis), iron deficiency anemia, mood disorder (dysthymia/depressive disorder not otherwise specified), and anxiety disorder; (3) that Plaintiff does not have an impairment or combination of impairments that meets or medically equals

the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) that Plaintiff has the residual functional capacity to perform light work, but with the non-exertional limitations of being able to understand and remember work locations and routines, maintain adequate attention and concentration for three to four step tasks and sustain a workday/workweek schedule, interact with supervisors and co-workers in a superficial manner, adapt to routine work changes, travel, and respond appropriately to hazards, but that she is unable to have contact with the general public; (5) that Plaintiff is unable to perform any PRW; (6) that considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform; and, (7) that Plaintiff has not been under a disability, as defined by the Social Security Act, from August 9, 2009, through the date of the Decision on April 5, 2013. (T. 40-48)

Plaintiff appealed to the Appeals Council (T. 34), and she provided supplemental evidence to be considered (T. 15-27, 28-33), but said request for review was denied on May 13, 2014. (T. 8-14) The Appeals Council set aside its earlier action to consider the additional information provided by Plaintiff, and it again denied Plaintiff's request for review on June 19, 2014. (T. 1-7) Plaintiff then filed this action on June 16, 2014. (Doc. 1) This case is before the undersigned pursuant to the consent of the parties. (Doc. 8) Both parties have filed appeal briefs (Docs. 12 and 13), and the case is ready for decision.

## II. Applicable Law

This Court's role is to determine whether substantial evidence supports the Commissioner's findings. *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the

Commissioner's decision. *Teague v. Astrue*, 638 F.3d 611, 614 (8th Cir. 2011). The Court must affirm the ALJ's decision if the record contains substantial evidence to support it. *Blackburn v. Colvin,* 761 F.3d 853, 858 (8th Cir. 2014). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the Court must affirm the ALJ's decision. *Id*.

A claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. § 423(d)(1)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past

relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. *See* 20 C.F.R. § 404.1520(a)(4). Only if he reaches the final stage does the fact finder consider the Plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. § 404.1520(a)(4)(v).

### III. Discussion

The Court must determine whether substantial evidence, taking the record as a whole, supports the Commissioner's decision that Plaintiff was not disabled from the alleged date of onset on August 9, 2009 through the date of the ALJ's Decision on April 5, 2013. Plaintiff raises a single point on appeal: that the ALJ erred in failing to find Plaintiff's fibromyalgia a severe impairment. (Doc. 12, pp. 8-9)

The ALJ did not find that Plaintiff's reported fibromyalgia was a severe impairment. (T. 40-41, 45) Plaintiff contends this was prejudicial error as the ALJ did not consider this impairment in his determination of Plaintiff's RFC. (Doc. 12, p. 8) Plaintiff relies on her testimony that she can only sit or stand for 20-30 minutes before becoming uncomfortable; that on December 6, 2012 Dr. Sakr found Plaintiff positive for 16 of 18 trigger points; and, that her symptoms continued and she saw Dr. Stills on December 2, 2013 with complaints of parascapular pain in her upper left chest. She contends that such impairment adversely affects her ability to perform light work. (Doc. 12, p. 9) For the reasons discussed below, the ALJ's determination that Plaintiff's reported fibromyalgia is not severe is supported by substantial evidence.

An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities. *Bowen v.*

*Yuckert*, 482 U.S. 137, 153 (1987). If the impairment would have no more than a minimal effect on the claimant's ability to work, then it does not satisfy the requirement of step two. *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007). It is the claimant's burden to establish that her impairment or combination of impairments are severe. *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000). While severity is not an onerous requirement for the claimant to meet, *see Hudson v. Bowen*, 870 F.2d 1392, 1395 (8th Cir. 1989), it is also not a toothless standard, and the Eighth Circuit Court of Appeals has upheld on numerous occasions the Commissioner's finding that a claimant failed to make this showing. *See, e.g., Kirby v. Astrue*, 500 F.3d 705, 708 (8th Cir. 2007); *Page*, 484 F.3d at 1043-44; *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003); *Simmons*, 264 F.3d at 755; *Gwathney v. Chater*, 104 F.3d 1043, 1045 (8th Cir. 1997); and, *Nguyen v. Chater*, 75 F.3d 429, 431 (8th Cir. 1996).

Plaintiff saw Dr. Sakr on December 6, 2012 to be established as a new patient. As noted by the ALJ, although there is absolutely no previous mention of such symptoms in the medical evidence, Plaintiff reported *a five-year history* of pain in both buttocks with radiation down both legs. (T. 45) In her Pain Questionnaire/Report dated February 25, 2012, Plaintiff was asked to describe her pain or other symptoms; she reported that "when the leasion (sic) are apparent I have extreme pain." (T. 200) She explained that the pain lasts "until it (leasion) (sic) is drained or gone," and that "when the leasion (sic) are apparent walking/sitting/standing is extemely painful." (T. 200) Plaintiff quite clearly attributes her pain to the skin lesions she had. She testified, however, that she had not had skin lesions or other MRSA related symptoms since August, 2010. (T. 64, 72) Notably, Plaintiff makes no mention in her February 25, 2012 Pain Questionnaire/Report of any fibromyalgia or hip pain going on for five years, nor did she include fibromyalgia as a disabling condition in her

application for DIB. The fact that Plaintiff did not allege fibromyalgia as a basis for her disability in her application for disability benefits is significant, even if the evidence of the impairment was later developed. *See Smith v. Shalala*, 987 F.2d 1371, 1375 (8th Cir. 1993); *Dunahoo v. Apfel*, 241, F. 3d 1033, 1039 (8th Cir. 2001).

In his notes from the December 6, 2012 visit, Dr. Sakr commented that Plaintiff's lumbar MRI from two years earlier was unremarkable. (T. 373) Dr. Sakr makes no mention of any outbreak of skin lesions. His physical examination of Plaintiff revealed a normal range of motion, normal strength, normal gait, no tenderness, no swelling, no deformity, no synovitis, no synovial thickness, negative straight leg raise tests, and fair curl and grip in both of Plaintiff's hands. (T. 375) Dr. Sakr did cryptically report that Plaintiff had 16 of 18 fibromyalgia trigger points, and he diagnosed Plaintiff with fibromyalgia. (T. 375) Dr. Sakr ordered a lab work-up, a bone scan, and he prescribed savella and klonopin. (T. 375) Plaintiff declined to have the bone scan done, stating that she would have the test "when she starts feeling bad again," and she declined to have the recommended lab work done saying that she would have it done "at a later date." (T. 376, 377) There is no indication in the record that she ever followed through with having either the bone scan or the lab work done. An ALJ may properly consider a claimant's noncompliance with a treating physician's directions. *Holley v. Massanari*, 253 F.3d 1088, 1092 (8th Cir. 2001); 20 C.F.R. § 404.1530(a), (b); *see also Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005) (failure to follow a recommended course of treatment . . . weighs against a claimant's credibility).

Plaintiff returned to see Dr. Sakr on February 14, 2013, at which time she reported having no chief complaints. (T. 370) Plaintiff reported having a marked response to the treatment regimen of savella and klonopin without any adverse effects. (T. 370) Plaintiff's history of MRSA infection

was noted to be "resolved." (T. 371) A physical examination showed normal range of motion and no tender or swollen joints. (T. 372) Dr. Sakr commented that Plaintiff had a "[g]ood response to treatment," and he continued the same medication regimen. (T. 372)

Plaintiff saw David A. Stills, M.D. on December 2, 2013. She reported having upper back pain, and she was tender to palpation in the left rhomboidal area. Dr. Stills diagnosed Plaintiff as having musculoskeletal pain in the right trapezius/rhomboid area, and Flexeril was prescribed. (T. 32)

Significant to the Court is the fact that neither Dr. Sakr nor Dr. Stills restricted Plaintiff's activities in any way. A mere diagnosis is not sufficient to prove disability absent some evidence to establish a functional loss resulting from that diagnosis. *See Trenary v. Bowen*, 898 F.2d 1361, 1364 (8th Cir. 1990) (an ALJ inquires into the functional limitations caused by an impairment because a diagnosis by itself does not equate to disability). *See also Tennant v. Apfel*, 224 F.3d 869, 870-71 (8th Cir. 2000) (in discrediting claimant's fibromyalgia-related symptoms the ALJ properly relied on the absence of physician ordered limitations and the lack of objective medical evidence) and *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996) (most persons diagnosed with fibromyalgia are not totally disabled from working). There is no medical evidence in the record to establish a functional loss resulting from Plaintiff's alleged fibromyalgia.

The ALJ considered the minimal and conservative treatment Plaintiff received for her complaints of fibromyalgia symptoms, and he correctly determined that the medical evidence of record did not support Plaintiff's claim of disabling fibromyalgia. (T. 45) If an impairment can be controlled by treatment or medication, it cannot be considered disabling. *See Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004); *Brace v. Astrue*, 578 F.3d 882, 885 (8th Cir. 2009); and, *see also*

*Smith v. Shalala*, 987 F.2d at 1374 (treating physician's conservative treatment was inconsistent with plaintiff's allegations of disabling pain). Considering the evidence as a whole, the ALJ's finding that Plaintiff's fibromyalgia is not severe is supported by substantial evidence.

We find that the ALJ's opinion is supported by substantial evidence on the record as a whole. Specifically, because the ALJ gave several valid reasons for finding Ashton's subjective complaints and limitations not fully credible, we defer to the ALJ's credibility determination. *See Turpin v. Colvin*, 750 F.3d 989, 993 (8th Cir. 2014). Further, it was proper for the ALJ to give little weight to the opinion of a treating physician (and Plaintiff's former employer), Dr. Robert C. Ahrens, regarding Ashton's residual functional capacity. *See Renstrom v. Astrue*, 680 F.3d 1057, 1064-65 (8th Cir. 2012) (treating physician's opinion does not automatically control; such opinion must be well-supported by medically acceptable clinical diagnostic techniques); *McDade v. Astrue*, 720 F.3d 994, 999-1000 (8th Cir. 2013) (physician's opinion was properly discounted as he appeared to rely on claimant's own subjective reports of symptoms and limitations; medical source opinion that applicant is unable to work involves issue reserved for Commissioner); and, *Holmstrom v. Massanari*, 270 F.3d 715, 721 (8th Cir. 2001) (the "checklist format, generality, and incompleteness of the assessments limit [the assessments's] evidentiary value").

In sum, because the credibility determination was proper and the ALJ's RFC findings are consistent with the medical evidence of record, we conclude that Ashton failed to meet her burden of showing greater mental or physical restrictions. *See Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004) (claimant has burden of establishing RFC). Moreover, the vocational expert's response to the ALJ's hypothetical (by vocational interrogatories) is substantial evidence that there are jobs in significant numbers in the national economy that Ashton could perform. *See McCoy v.*

*Astrue*, 648 F.3d 605, 617 (8th Cir. 2011).

## IV. Conclusion

Having carefully reviewed and considered the entire record, the Court finds that substantial evidence supports the ALJ's Decision denying Plaintiff DIB benefits. The ALJ's Decision should be, and it hereby is, affirmed. Plaintiff's Complaint should be dismissed with prejudice.

DATED this 17th day of August, 2015.

/s/ Mark E. Ford
HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE